·CENTRAL TRUST CO. OF NEW YORK v. CHICAGO & O. P. ELEVATED R. CO.

DEVINE v. INSULL.

(Circuit Court of Appeals, Seventh Circuit.   January 5, 1915.)

No. 2150.

MASTER AND SERVANT ⬦236—MASTER'S LIABILITY FOR INJURY TO SERVANT— CONTRIBUTORY NEGLIGENCE.

Deceased was employed as a carpenter by an elevated railway company, and at the time of the injury which caused his death was working with another between the southern and central of the three tracks.   There was a board walk three feet wide between such tracks, on which he was standing facing toward the west or southwest and stooping to pick up a plank, when a train approaching from the east on the central track gave a signal whistle, being then 150 or 200 feet distant.   Deceased did not turn to face the train, but when it was 15 or 20 feet away turned with face toward the south, still stooping, and was struck by the train. A person could safely stand on the walk when trains were passing on both tracks at the same time, and there was testimony that, if deceased had not changed his position at the last moment, his body would have been in the clear.   He had been engaged in similar work for at least a month and was familiar with the situation.   *Held*, that the evidence did not show any negligence on the part of the motorman in charge of the train, but that the injury was due to the negligence of deceased, which barred a recovery for his death.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 681, 723–742; Dec. Dig. ⬦236.]

. Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois; Christian C. Kohlsaat, Judge.

Suit in equity by the Central Trust Company of New York against the Chicago & Oak Park Elevated Railroad Company. From an order confirming the report of the master, rejecting the claim for damages of John F. Devine, administrator of the estate of Harry A. Egan, deceased, against Samuel Insull, receiver of defendant, claimant appeals.   Affirmed.

Appellant filed his petition to recover damages for the death of his intestate, alleged to have been caused by the gross negligence of the defendant elevated railway company.   Upon a hearing before a master, the issues were determined adversely to the petitioner; and this appeal is from the order confirming the master's report.   The case is thus stated by the master in his written opinion:

"This claim is filed to recover damages for the death of Harry A. Egan, who was killed on the 11th day of November, 1910, while in the employ of the defendant company as a carpenter.   It appears that on the day in question Egan was working on the structure of defendant company at the intersection of Lake street and Central Park avenue, engaged in installing a cable box cover.   The superstructure upon which deceased was working is about 30 feet above the street level and at this point there are three tracks of defendant company.   The north track is used for east-bound local trains, the middle track for express trains, and the south track for west-bound local trains. About a foot north of the north rail of the south track is a wooden guard rail, and immediately north of the guard rail is a live rail.   Between

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests &Indexes

the south or west-bound track and the middle or express track, and just north of the live rail above referred to, there is a wooden sidewalk about 3 feet in width running parallel with the tracks. North of the sidewalk is the wooden guard rail for. the express track and at a distance to the north of about a foot and a half is the south rail of the express track.

"The accident happened about 5 o'clock in the evening. Egan and a fellow carpenter named James Hollinger were getting ready to quit for the day, and were engaged in picking up boards which were lying on the sidewalk between the two tracks and carrying them west to a point about a block distant, where they were to work the next morning. Egan was standing on this sidewalk between the south and middle tracks, stooping over to pick up some of these boards, and facing in a southwesterly direction, when he was struck by a west-bound express train on the middle track, and received the injuries which caused his death.

"At the time of the accident Hollinger was about 70 feet west of the deceased and walking east toward the point of the accident. His testimony was to the effect that he saw the train when it was about 175 feet away from him, his attention being attracted by the whistle; that at this time Egan was in a stooping position and facing a little south of west; that when the express train was about 15 feet away from Egan, Egan changed his position, bringing his head around toward the south, still in a stooping position, and he was struck in the hip by the front part of the passing train and his head thrown against the rail of the south or west-bound track. Hollinger further testified that prior to Egan's change of position just before the train struck him his body was in the clear. Other witnesses testified that as the train approached Egan, and prior to his change of position, Egan's feet were about the middle, or south of the middle, of the sidewalk, and his body from 2½ to 3 feet south of the south rail of the express track.

"It was dusk at the time the accident happened, and the headlight on the train was lighted. It appears from the testimony that the train had slowed down for the switch at St. Louis avenue, about 350 feet east of the point of the accident, and that the train was running at less than full speed and about 18 or 20 miles an hour at the time the accident occurred. It appears without dispute from the record that the motorman blew the whistle when the train was from 150 to 200 feet east of the point where Egan was working. As the train approached, Egan remained in a stooping position, with his face toward the west or southwest, and with his back to the train, and did not look toward the east.

"Egan had been working as a carpenter for defendant since the month of December preceding the accident, and had been engaged in work similar to that which he was doing on the day in question for at least a month prior to his death. The testimony shows that the sidewalk upon which Egan was standing was of ample width to permit one to occupy the same safely, even though trains were passing simultaneously on the south and middle tracks. During the period while Egan was at work on the structure and had occasion to use this sidewalk, trains on the south or local track, and on the middle or express track would pass simultaneously the point where Egan and his fellow carpenters were working three or four times daily. The middle track was used for express trains east-bound in the morning and for express trains west-bound in the evening, and the train which caused the accident was either the first or second west-bound express train on the evening in question.

"The contention of claimant is that the conduct of the motorman in running his train without any effort to slacken his speed when he saw Egan in a position of danger was negligence so gross as to amount to willfulness. The defense to the claim on the part of the receiver is contributory negligence of the deceased, and, further, that negligence of the motorman, if any, was that of a fellow servant. I can find no foundation in the record to sustain claimant's charge of willful negligence on the part of the defendant. The express train was not run at any unusual speed and warning of the approach of the train was given. It seems clear from the evidence that until the train was within 10 or 15 feet of deceased he was in no danger therefrom, and that his change of position then, and immediately prior to the accident, brought

him in the way of the passing train. I am, therefore, unable to find any such wanton or reckless conduct on the part of the motorman as amounts to willfulness.

"Egan was a man of mature years and of good hearing and eyesight. He had worked on the structure of defendant company for a sufficient length of time to be chargeable with knowledge of the surroundings, and the danger to him in his employment from passing trains was obvious. Against such known and obvious dangers Egan manifestly assumed the ordinary risks of his employment. His work took him between the south or west-bound local track and the middle track, and Egan is presumed to have known that at the hour of the day when the accident happened the middle track was used for west-bound express trains. Despite his knowledge of existing conditions, Egan turns his back to the east, the direction from which the approach of trains on both tracks is to be expected, and apparently without looking or taking any precautions for his safety assumes a position of danger with an approaching train from 10 to 15 feet distant from him. No reason is apparent why the deceased should not have faced east as he picked up the material from the sidewalk, the direction in which danger [from] passing trains [was] to be apprehended.

"A party has no right knowingly to expose himself to danger, and then recover damages for the injury which he might have avoided by the use of reasonable precaution, and I cannot escape the conclusion that the facts in this record disclose contributory negligence on the part of the deceased which bar any right of recovery for his death. Wilson v. I. C. R. R. Co., 210 Ill. 603 [71 N. E. 398]; Chicago, Rock Island & Pacific R. R. v. Miller, 135 Ill. App. 26; Aerkfetz v. Humphrey, 145 U. S. 418 [12 Sup. Ct. 835, 36 L. Ed. 758]."

Elmer A. Roat, of Chicago, Ill., for appellant.

Henry S. McAuley, of Chicago, Ill., for appellee.

Before BAKER and SEAMAN, Circuit Judges, and GEIGER, District Judge.

PER CURIAM. Upon the fundamental issues respecting the gross negligence of the railroad company, the assumption of risk by, or the negligence of, the deceased, the evidence and the principles governing its consideration are well stated by the master; and we adopt his views. This renders unnecessary a consideration of the other questions discussed before the master or upon the hearing in this court.

The order is affirmed.